# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  1:17sw  691
INFORMATION ASSOCIATED WITH ENDLESS_CEDIS )
THAT IS STORED AT PREMISES CONTROLLED BY )
INSTAGRAM )

**OCT 1 3 2017**

**UNDER SEAL**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § § 841(a)(1), 846 | Conspiracy to distribute controlled substances. |

The application is based on these facts:
See attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Mark J. Grado, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____10/13/2017_____

_____/s/_____
Michael S. Nachmanoff
United States Magistrate Judge
*Judge's signature*

City and state:  Alexandria, Virginia

Hon. Michael S. Nachmanoff, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Instagram profile with usernames: _IGMWORLD, ENDLESS_CEDIS, LOYAL_TAYVON, and TRAPWRIGHT703, which are stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a company that is owned by Facebook, Inc. and headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be disclosed by Instagram, LLC**

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, LLC, including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, LLC, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram, LLC is required to disclose the following information to the government for each account listed in Attachment A:

a. All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;

b. All past and current usernames associated with the account;

c. The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d. All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;

e. All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

f. All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

g. All communications or other messages sent or received by the account;

h. All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content;

i. All photographs and images in the user gallery for the account;

j. All location data associated with the account, including geotags;

k. All data and information that has been deleted by the user;

l.   A list of all of the people that the user follows on Instagram and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user;

m.   A list of all users that the account has "unfollowed" or blocked;

n.   All privacy and account settings;

o.   All records of Instagram searches performed by the account, including all past searches saved by the account;

p.   All information about connections between the account and third-party websites and applications; and,

q.   All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute controlled substances) involving NASIRU CAREW, NATHANIEL BRUCE COBBOLD, TAYVON PATTERSON, and DEON WRIGHT, including, for the usernames identified on Attachment A, information pertaining to the following matters:

(a)   The possession and/or sale of controlled substances;

(b)   The use of the United States Postal Service and other\shipping companies to send packages;

(c)   The possession of large amounts of U.S. currency;

(d)   The possession of firearms and ammunition;

(e)   Evidence indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Instagram account owner;

(f)  Evidence indicating the Instagram account owner's state of mind as it relates to the crime under investigation; and

(g)  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

l.  A list of all of the people that the user follows on Instagram and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user;

m.  A list of all users that the account has "unfollowed" or blocked;

n.  All privacy and account settings;

o.  All records of Instagram searches performed by the account, including all past searches saved by the account;

p.  All information about connections between the account and third-party websites and applications; and,

q.  All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute controlled substances) involving NASIRU CAREW, NATHANIEL BRUCE COBBOLD, TAYVON PATTERSON, and DEON WRIGHT, including, for the usernames identified on Attachment A, information pertaining to the following matters:

(a)  The possession and/or sale of controlled substances;

(b)  The use of the United States Postal Service and other shipping companies to send packages;

(c)  The possession of large amounts of U.S. currency;

(d)  The possession of firearms and ammunition;

(e)  Evidence indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Instagram account owner;

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

OCT 1 3 2017

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ENDLESS_CEDIS THAT IS STORED AT PREMISES CONTROLLED BY INSTAGRAM | **UNDER SEAL**<br><br>Case No. 1:17sw C91 |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Mark J. Grado, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1.      I make this affidavit in support of an application for a search warrant for

information associated with _IGMWORLD ("SUBJECT ACCOUNT 1"), ENDLESS_CEDIS

("SUBJECT ACCOUNT 2"), LOYAL_TAYVON ("SUBJECT ACCOUNT 3"), and

TRAPWRIGHT703 ("SUBJECT ACCOUNT 4"), stored at premises owned, maintained,

controlled, or operated by Instagram, LLC, ("Instagram") a social-networking company owned

by Facebook, Inc. and headquartered in San Francisco, California.  The information to be

searched is described in the following paragraphs and in Attachment A.  This affidavit is made in

support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and

(c)(1)(A), to require Instagram to disclose to the government records and other information in its

possession, including the contents of communications, pertaining to the subscriber or customer

associated with SUBJECT ACCOUNTS 1, 2, 3, and 4.

2.    I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2014. I have experience investigating narcotics and violent crime offenses.

3.    I am currently assigned to the FBI's Washington Field Office, Northern Virginia Resident Agency, and have been so assigned since November 2014. The squad I am assigned to conducts investigations with officers and agents of the Northern Virginia Gang Task Force as well as the High Intensity Drug Trafficking Area programs within the greater Washington Field Office's area of responsibility and elsewhere. As a member of this squad, my duties include, but are not limited to, investigating violations of state and federal laws concerning the unlawful importation, manufacture, and distribution of controlled substances to include conspiracy to distribute violations and criminal enterprise organizations.

4.    Further, through instruction, training, and participation in investigations, as well as through consultation with other agents and law enforcement personnel, I have become familiar with the manner in which narcotics traffickers conduct their illegal business and the methods used to disguise their narcotics activities. From experience and training, I have also learned that narcotics traffickers frequently use encrypted cellular telephone applications, cellular phone services, and other technologies to communicate, conduct, and conceal their illegal activities from law enforcement.

5.    Based on my training and experience and the facts as set forth in this affidavit, I submit there is probable cause to believe that NASIRU CAREW ("CAREW") has conspired with NATHANIEL BRUCE COBBOLD ("COBBOLD"), TAYVON PATTERSON ("PATTERSON"), DEON WRIGHT ("WRIGHT"), and others to distribute and possess with intent to distribute controlled substances, in violation of Title 21 United States Code, Sections

2

841(a)(1) and 846 . I also have probable cause to believe that SUBJECT ACCOUNTS 1, 2, 3, and 4 contain evidence, as set forth in Attachment B hereto, of these offenses.

6.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## Probable Cause

A.     Background on the Investigation

7.     In February 2017, a cooperating source ("CI-1") reported to the Prince William County Police Department that Tarvell Vandiver was a narcotics distributor. CI-1 is a member of the Imperial Gangster Blood gang. CI-1 will be referred to in the masculine gender, regardless of CI-1's true gender. CI-1 has been convicted of two felonies, including robbery and a probation violation. He was arrested in December of 2016, in Prince George's County, Maryland, for possessing a stolen firearm as a convicted felon and possession of controlled substances. CI-1 originally cooperated because he hoped to receive a lesser sentence. Based on CI-1's cooperation, Prince George's County dismissed his charges. CI-1 continues to cooperate because he is being compensated. CI-1 also hopes to be relocated.

8.     In March 2017, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and FBI began jointly investigating Blood gang members involved in criminal activity in Northern Virginia.

9.     During the course of this investigation, law enforcement learned that Vandiver is actively conspiring with CAREW to distribute marijuana, THC, and firearms. CAREW's main residence appears to be located in San Diego County, California. However, CAREW regularly

3

travels to this area. During a recent trip to this area, CAREW was arrested in Prince George's County, Maryland. During the course of this investigation, agents have determined that CAREW leads an organization responsible for sending multi-pound shipments of marijuana and THC infused edible products to the Northern Virginia area. Moreover, several suspects have expressed their fear of CAREW.

      B.    Search Warrant issued for Nasiru Carew's Snapchat Account

      10.    Based on information that I presented to this Court, the Honorable John F. Anderson, U.S. Magistrate Judge for the Eastern District of Virginia, issued a sealed search warrant for CAREW's known Snapchat account, nastyworld1, on August 16, 2017 (1:17sw510).

      11.    This affidavit incorporates by reference my affidavit presented in support of the search warrant for Snapchat account nastyworld1. (*See* Attachment C). In my affidavit, I presented information establishing that there is probable cause to believe that CAREW is a member of a conspiracy to distribute controlled substances.

      C.    Probable Cause for SUBJECT ACCOUNT 1

      *a. Photographs and video posts on SUBJECT ACCOUNT 1*

      12.    SUBJECT ACCOUNT 1 is known to be used by CAREW because CAREW's cellular phone was seized during his arrest by the Prince George's County Police Department ("PGCPD") on April 21, 2017. The PGCPD obtained a search warrant for CAREW's phone. During the search of CAREW's phone, law enforcement reviewed information indicating CAREW is the user of SUBJECT ACCOUNT 1. In addition, videos and pictures of CAREW were and are currently observed being posted on SUBJECT ACCOUNT 1.

      13.    Through the use of a law enforcement undercover Instagram account, law enforcement have observed numerous narcotics related videos and photographs of CAREW and

4

other known and unknown co-conspirators on SUBJECT ACCOUNT 1.  Several videos include
distribution quantities of marijuana and ingestible THC.  Several other videos include CAREW
displaying thousands of dollars in U.S. currency, despite CAREW being unemployed.

> b.  *Video posts on SUBJECT ACCOUNT 1 following a controlled buy of marijuana
> on July 27, 2017*

14.  On July 27, 2017, CI-1, at law enforcement direction, conducted a controlled
purchase of three pounds of marijuana from Vandiver.  CI-1 was provided with $8,400 in buy
money and outfitted with an audio recording device.  Surveillance was established to monitor the
transaction.

15.  On July 27, 2017, CI-1 placed an order from Vandiver for three pounds of
marijuana.  CI-1 met Vandiver in Woodbridge, Virginia, and traveled with him to the Tanger
Outlets located at the National Harbor parking lot in Oxon Hill, Maryland.  Surveillance
observed a silver Mercedes Benz enter the parking lot and meet CI-1 and Vandiver.  The person
in the vehicle was positively identified as CAREW.  While in the parking lot, CI-1 provided
Vandiver the recorded buy money and Vandiver then entered the silver Mercedes Benz.
Surveillance then observed CI-1 follow the silver Mercedes Benz to a Sunoco gas station located
at the National Harbor.  CAREW was observed exiting the vehicle and walking into the gas
station.  Vandiver was then observed exiting the silver Mercedes Benz and reentering CI-1's
vehicle.  A short time later CAREW returned to the vehicle and both vehicles left the gas station.

16.  Later that evening, CI-1 provided law enforcement with three vacuum packed,
heat-sealed baggies filled with a green leafy substance believed to be marijuana.  CI-1 stated that
he provided Vandiver with the $8,400.  CI-1 stated that Vandiver exited the vehicle in the Tanger
Outlet parking lot and entered the silver Mercedes Benz.  CI-1 then stated that he followed the

silver Mercedes Benz to the Sunoco gas station where Vandiver entered his vehicle and gave him the marijuana.

17.     Later that evening, a video recording was posted to SUBJECT ACCOUNT 1. CAREW was observed in the video with U.S. currency in his pocket. A frame from the video was isolated and recorded. A one-hundred dollar bill with serial number LE01664257E was observed in the video. This serial number matched the serial number of a one-hundred dollar bill provided to CI-1 in buy money for the July 27, 2017 marijuana transaction.

    *c. Videos posted on SUBJECT ACCOUNT 1 on August 1, 2017*

18.     On August 1, 2017, a video recording involving CAREW, Vandiver, and an unidentified black male was observed and recorded on SUBJECT ACCOUNT 1. Vandiver was seen walking to the camera to display a stack of money that he pulled from his pocket. Vandiver is known to be unemployed.

19.     A second video posted on SUBJECT ACCOUNT 1 shows CAREW holding numerous one-hundred dollar bills with a banded stack of twenty dollar bills on his lap. A currency band wrapped around a stack of twenty dollar bills displayed the amount two thousand dollars "$2,000." The video then panned to a black zipper bag filled with banded U.S. currency in $100 and $20 bill denominations.

20.     Another video posted on SUBJECT ACCOUNT 1 showed the message, "@_igmworld, iceboxjewlery.com." A video of a gloved hand holding an IGM logo, I GOT ME gold and diamond pendant is seen in the video. CAREW uses the IGM logo as a business logo to promote and sell clothes. CAREW can be seen in several videos wearing a pendant with this logo. An internet search of iceboxjewlery.com reveals that Ice Box Inc. is a jewelry company in Atlanta, Georgia, which makes custom order jewelry. Based on my training, experience, and a

6

comparison of similar sized comparables for pendants similar to the IGM pendant for sale on their website, I believe there is probable cause that the pendant costs between $20,000-$30,000.

21.     Another video posted that day displayed the message "That's Endless Bitch, @endless_cedis, Ate all my charges like a snack see wat starvation do. Fully Bossed up, IGM." The video panned to show stacks of one-hundred dollar bills, banded and loose on a bed sheet.

   *d. Video posts on SUBJECT ACCOUNT 1 on August 17, 2017*

22.     A video posted on SUBJECT ACCOUNT 1 was recorded by law enforcement and displayed the message "IGM...brothers...anything goes...mybruddaskeeper." CAREW is then recorded sitting on counter with liquor, money, and a pistol next to his leg. The message, "Endlessly" is seen written on the video. Another video that day featured the message, "IGM...IGOTME Marie's Sons, We Never Gone Lose #1upweallup Loyalty came free the money is a plus. Watch WE, fuk it up fuk it up." CAREW then recorded himself with four stacks of banded U.S. currency. Another video is observed with the message, "Endless x Profit x CMC, Point Loma, I won't say fuck you, I'll let you say fuck yourself! Ur word is ur bond." CAREW recorded himself holding four stacks of banded U.S. currency.

23.     A video posted that same day shows a video of stacks of U.S. currency of one-hundred dollar bills and a pistol. The message "#1upweallup" is seen with stacks of U.S. currency in one one-hundred dollar, fifty dollar, and twenty dollar bills placed on a counter.

24.     Another video with a message "Circle got smaller money got longer I fucks with you like you fucks with ME. Equality 1 UP WE ALL UP...everything else will fall in place...I'm FOCUS MANNN" was observed with a video recording of stacks of loose and banded U.S. currency placed in a shoe box.

7

25.     CAREW frequently uses the Phrase "1up" or "1upweallup" posted in SUBJECT ACCOUNT 1 videos and photographs. Based on my knowledge of this investigation, I know that CAREW and others in this distribution conspiracy use the phrase "1up or 1upweallup" as a way of communicating with other that the person has been resupplied with drugs and that the person has drugs available to sell to everyone.

*e.  Video posts on SUBJECT ACCOUNT 1 on August 28, 2017*

26.     A video posted on SUBJECT ACCOUNT 1 displayed a message "Profit." A video of IGM (I Got Me) logo T-shirts and several stacks of one-hundred dollar bills are seen with the message "Nothing stops the Man who desires to Achieve. Every obstacle is simply a course to develop his Achievement muscle. It's a strengthening of his power of Accomplishments." Further, videos of banded one-hundred dollar bills with IGM T-shirts are then seen with the message "Come to the table with something besides your wants and needs Earn something fucker, Work."

27.     Based on my knowledge of this case, I know that this message posted by CAREW is in reference to selling drugs. When CAREW posted the phrases "Earn something" and "Work," CAREW is referring to the selling of drugs and making money off those transactions for personal gain.

*f.  Videos posted on SUBJECT ACCOUNT 1 on October 3, 2017*

28.     On October 3, 2017, law enforcement conducted surveillance on Rashourn Niles, who is a known cocaine distributor and a suspected co-conspirator of CAREW's. Niles departed Woodbridge, Virginia, and was observed arriving at CAREW's residence in Maryland. While there, CAREW and Niles met with an unidentified male. CAREW was next observed exiting his

Case 1:17-sw-00691-MSN   Document 1   Filed 10/13/17   Page 15 of 86 PageID# 15

residence with a large black duffle bag. CAREW was then observed placing the bag into a white Range Rover.

29.     Later that day, a video showing several plastic bags and vacuum heat-sealed plastic bags filled with a green leafy substance was posted to SUBJECT ACCOUNT 1. The bags were located in a black bag with a zipper. Later that day, a video of CAREW holding a large stack of U.S. Currency with the message "don't move for nothing less than 10k" was posted on SUBJECT ACCOUNT 1.

30.     Based on my training, experience, and knowledge of this investigation, I know that drug dealers conduct their transactions in cash. I also know that the green leafy substance in the posted videos is marijuana. I further believe that CAREW is using SUBJECT ACCOUNT 1 to document his narcotics activities and evidence of these and other activities can be found on SUBJECT ACCOUNT 1.

D.     Probable Cause for SUBJECT ACCOUNT 2

a.     *Photograph and Video posts on SUBJECT ACCOUNT 2*

31.     Videos with drug activity and photographs with CAREW and other suspected co-conspirators have been posted to SUBJECT ACCOUNT 2. SUBJECT ACCOUNT 2 is known to be used by COBBOLD because videos and pictures of COBBOLD are posted regularly on this account. Additionally, a Snapchat chat message with an address in Woodbridge, Virginia was communicated on March 13, 2017 and November 29, 2016 between the Snapchat account "endless_cedis" and CAREW's Snapchat account. The address was verified by law enforcement as the registered address for COBBOLD.

9

32.     Based on information that I presented to the Honorable John F. Anderson, U.S. Magistrate Judge, the Court issued a sealed search warrant for COBBOLD's known Snapchat account, "endless_cedis," on September 29, 2017 (1:17sw625).

33.     This affidavit incorporates by reference my affidavit presented in support of the search warrant for Snapchat account "endless_cedis." (*See* Attachment D). In my affidavit, I presented information establishing that there was probable cause to believe that COBBOLD was an active co-conspirator with CAREW in the distribution of controlled substances and that he has been recently in possession of distribution quantities of controlled substances similar to those distributed by CAREW and his organization. Further, I presented information that there was probable cause to believe that COBBOLD used his Snapchat account to communicate with CAREW about the distribution of controlled substances.

        b.  *Video post on SUBJECT ACCOUNT 2 on September 10, 2016*

34.     On September 10, 2016, a video showing COBBOLD smoking and holding two packages of candy packages with the label "GUMMY 420" on the label was posted to SUBJECT ACCOUNT 2. A frame of the video was isolated and the printing "150mg THC" was seen written on the packages.

35.     On April 21, 2017, two United States Postal Service packages weighing a total of approximately 25 pounds, were delivered to an address in Woodbridge, Virginia. These parcels were identified as a shipment related to CAREW and his drug distribution organization. The parcels were retrieved by a suspected co-conspirator and subsequently seized by the Prince William County Police Department. Inside the parcels, law enforcement located approximately 25 pounds of packages labeled "GUMMY 420," 150mg THC, edible gummies.

36.     On October 8, 2016 and May 7, 2017, COBBOLD posted videos of himself on SUBJECT ACCOUNT 2. These videos were taken at CAREW's known residence in the San Diego, California area. In both areas, COBBOLD is observed smoking a substance suspected of being marijuana. Based on the information on the video posts, there is probable cause to believe that COBBOLD was physically in the San Diego area at CAREW's residence during both of these postings.

37.     On May 8, 2017, two United States Postal Service packages weighing a total of approximately 25 pounds, were delivered to an address in King George, Virginia. These parcels were identified as a shipment related to CAREW and his drug distribution organization. The parcels were retrieved by an armed CAREW co-conspirator and subsequently seized by the King George County Sheriff's Office. Inside the parcels, law enforcement located 25 pounds of packages labeled "GUMMY 420," 150mg THC, edible gummies. The edibles labeling was marked for use in California.

38.     On May 8, 2017, two United States Postal Service packages weighing a total of approximately 25 pounds, were delivered to an address in Fredericksburg, Virginia. These parcels were identified as a shipment related to CAREW and his drug distribution organization. The parcels were retrieved by an armed CAREW co-conspirator and subsequently seized by the Stafford County Sheriff's Office. Inside the parcels, law enforcement located 25 pounds of packages labeled "GUMMY 420," 150mg THC, edible gummies. The edibles labeling was marked for use in California.

39.     Based on my training, experience, and knowledge of this investigation, I believe there is probable cause to believe that COBBOLD was at CAREW's residence during the above recorded posts and that COBBOLD was assisting in the acquisition and distribution of controlled

11

substances to CAREW to locations in the Eastern District of Virginia and elsewhere. Additionally, I believe there is probable cause to believe that the packages are THC infused medical marijuana gummies that originate from the same source as other THC packets recently seized during this conspiracy. Those packets originated in the San Diego, California area. All of the parcels that have been interdicted and seized reveal distribution amounts of marijuana and THC, which all originated in California. Further, almost all of the parcels originated in the San Diego area.

40.     As stated in my search warrant affidavit for COBBOLD's Snapchat account, COBBOLD has used his Snapchat account to communicate addresses to CAREW that have been used for package deliveries from the San Diego area during this time period.

41.     Further, as detailed later in this affidavit and according to Instagram's website, the Instagram application offers a feature called "Instagram Direct." This allows account users to directly message other users without the message being publically posted. "Instagram Direct" also allows "disappearing photos and videos" to be sent to other users. Instagram has informed law enforcement that copies of these messages can be stored on user accounts and remain on their servers. The length of time these videos and photographs remain on their servers is dependent upon the frequency and size of data used by the account holder.

42.     Based on my experience and my knowledge of this case, I believe there is probable cause to believe that COBBOLD has used SUBECT ACCOUNT 2 to document his narcotics activities, communicate with other members of the conspiracy, and that evidence of these and other activities can be found on SUBJECT ACCOUNT 2.

12

E.      Probable Cause for SUBJECT ACCOUNT 3

      *a. Photograph and video posts on SUBJECT ACCOUNT 3*

43.     SUBJECT ACCOUNT 3 is known to be used by PATTERSON because videos and pictures of PATTERSON are observed posted regularly on this account.

      *b. Video Post on SUBJECT ACCOUNT 3 on September 22, 2017*

44.     On September 22, 2017, a video with a message stating, "30,000 but it looks light though #Loyaltybundles #IGM" was posted to SUBJECT ACCOUNT 3. A video of a black male's hand is seen sifting numerous one-hundred dollar bills onto a clothing labeled "Higher League." Shortly thereafter, a video of a stack of one-hundred dollar bills on a table followed by PATTERSON lip syncing a song to the camera holding several stacks of U.S. currency consisting of twenty dollar bills was posted to SUBJECT ACCOUNT 3. "Higher League" is a clothing brand created by CAREW. I believe the phrase "Higher" in "Higher League" is a play on words to reference getting high from marijuana or other controlled substances.

45.     On September 2, 2017, PATTERSON posted a video on SUBJECT ACCOUNT 3 capturing numerous plants suspected of being marijuana growing in a tented area with a white canopy. The plants appeared to be mature plants contained in pots as well as planted in the ground. On October 5, 2017, physical surveillance was conducted at CAREW's residence in the San Diego area. Photographs taken during surveillance show a white tent consistent with the color and shape of the tent canopy observed in PATTERSON's September 2, 2017 post on SUBJECT ACCOUNT 3.

46.     On September 1, 2017, a video of PATTERSON holding three currency banded stacks of U.S. currency was posted on SUBJECT ACCOUNT 3.

47.     On July 20, 2017, a video of PATTERSON placing a stack of twenty dollar bills though a money counting machine was posted on SUBJECT ACCOUNT 3.  The money counting machine processed 215 bills to bring the total to $4,300.

48.     On May 24, 2017, a video of a black male's hand counting thousands of dollars of one-hundred dollar bills was posted on SUBJECT ACCOUNT 3.  Later that day, a picture of three stacks of one-hundred dollar bills is posted in front of a t-shirt with the logo "IGM."

49.     On May 20, 2017, a video of PATTERSON counting a stack of several dozen twenty dollar bills was observed.  PATTERSON was wearing a IGM (I Got Me) t-shirt and a message was observed on the video stating, "La Papers IGM Shit."

50.     Based on my training, experience, and knowledge of the case, I know that narcotics distributors conduct their transactions and deal in cash.  I also know that CAREW created the brand "I Got Me" to include a logo of a figure helping a figure off the ground.  I believe there is probable cause that PATTERSON is a member of his distribution based on the amount of money PATTERSON has displayed.  I also believe that PATTERSON wears or takes videos and pictures with IGM clothing and logos in order to promote CAREW's brand.

    c.  *Parcel Deliveries to PATTERSON's Residences*

51.     According to a law enforcement database, PATTERSON is linked to two residences in Maryland between November 2016 and March 2017.  A United States Postal Service database search found that between January 5, 2017 and April 18, 2017, these residences received a total of eighteen (18) parcels totaling approximately 200 pounds, all originating from the San Diego, Californian area.  CAREW has a residence in the San Diego, California area.

52.     I believe there is probable cause that PATTERSON is a member of CAREW's distribution network and that he is using SUBJECT ACCOUNT 3 to document and communicate

14

with CAREW and other members of the conspiracy and that there is evidence of this on the account.

F.      Probable Cause for SUBJECT ACCOUNT 4

53.     This affidavit incorporates by reference my affidavit presented in support of the search warrant for Snapchat account "trapwright703." (See Attachment D).  In my affidavit, I presented information establishing that there is probable cause to believe that WRIGHT is a member of a conspiracy to distribute controlled substances.

54.     SUBJECT ACCOUNT 4 is known to be used by WRIGHT because videos and pictures of WRIGHT are posted regularly on this account.  Additionally, WRIGHT has a Snapchat user account with the same username.

    a.  *WRIGHT identified as a narcotics co-conspirator with CAREW*

55.     On April 21, 2017, WRIGHT was arrested with a co-conspirator in Maryland following a traffic stop by Prince George's County Police Department.  Law enforcement seized approximately 4.5 pounds of marijuana and a Glock .40 caliber pistol from the center console of the vehicle.  The Glock pistol was loaded with 13 rounds and one round in the chamber.  Law enforcement have obtained a court order for historical cell site data for WRIGHT's known cellular phone.  This information shows that just prior to WRIGHT's arrest, WRIGHT placed a call to CAREW's known phone number.  Approximately one hour later, WRIGHT's cell phone accessed a cell tower in Hyattsville, Maryland, when calling CAREW's number.  This tower is approximately one mile from where WRIGHT was arrested.  Approximately one hour after making this call, WRIGHT and his co-conspirator were arrested.

    b.  *Photograph and Video posts on SUBJECT ACCOUNT 4*

15

56.     On April 3, 2017, a video of WRIGHT holding two handfuls of U.S. Currency in an apartment hallway was posted to SUBJECT ACCOUNT 4.

57.     On February 27, 2017, a photograph of WRIGHT wearing a Higher League tracksuit with numerous one-hundred and twenty dollar bills laying on the floor was posted to SUBJECT ACCOUNT 4.  WRIGHT is known to be unemployed.

58.     On January 27, 2017, a photograph of WRIGHT holding numerous U.S. currency bills on his shoulder was posted to SUBJECT ACCOUNT 4.  Based on the photograph, I estimate the quantity of money are hundreds of bills of paper currency.

59.     On December 9, 2016, a photograph of numerous one-hundred and twenty-dollar bills laying on the floor at a person's feet was posted to SUBJECT ACCOUNT 4.  Later that day, WRIGHT posted a photograph on the same account of himself counting a large stack of U.S. Currency.

60.     On November 6, 2016, a photograph of numerous one-hundred and twenty-dollar bills spread out on the ground with someone's shoe on the money was posted to SUBJECT ACCOUNT 4.

61.     On September 7, 2016 and June 11, 2016, photographs of WRIGHT with unidentified subjects holding stacks of U.S. Currency was posted to SUBJECT ACCOUNT 4.

62.     On April 30, 2016, a photograph of WRIGHT's Snapchat account "trapwright703" was posted to SUBJECT ACCOUNT 4.  WRIGHT posted a comment to "Add me on Snap Trapwright703."

63.     On January 6, 2016, a video of WRIGHT counting a large stack of money in a car with the comment "I put dat glock on my hip and now watch me go get it," was posted to SUBJECT ACCOUNT 4.

16

64.     Based on my training, experience, and knowledge of this investigation, I believe there is probable cause to believe that WRIGHT and CAREW are involved in a conspiracy to distribute narcotics.  I believe that the historical cell site data on April 21, 2017 shows WRIGHT was in communication with CAREW and that he was in the same area with CAREW prior to his arrest.  Also, I know that drug distributors deal primarily in cash and the amount of money displayed on SUBJECT ACCCOUNT 4 is consistent with drug trafficking — in particular, because WRIGHT is unemployed.  Further, I believe that WRIGHT has used SUBJECT ACCOUNT 4 to document narcotic distribution activity and communicate with CAREW and other members of the conspiracy and that there is evidence of this on the account.

### Background on Instagram

65.     From my review of publicly available information provided by Instagram about its service, including Instagram's "Privacy Policy," I am aware of the following about Instagram and about the information collected and retained by Instagram.

66.     Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com.  Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information.  Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

67.     Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter.  When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a

17

user made add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos.

68.    Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram.

69.    Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

70.    Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

71.    Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block the, which prevents the blocked user from following that user.

72.     Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

73.     Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

74.     Users on Instagram may also search Instagram for other users or particular types of photos or other content.

75.     For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

76.     Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram. For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

77.     Instagram also collects information on the particular devices used to access Instagram. In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

19

78.     Instagram also collects other data associated with user content. For example,
Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags"
that mark the location of a photo and which may include latitude and longitude information,
comments on photos, and other information.

79.     Instagram also may communicate with the user, by email or otherwise. Instagram
collects and maintains copies of communications between Instagram and the user.

80.     As explained herein, information stored in connection with an Instagram account
may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal
conduct under investigation, thus enabling the United States to establish and prove each element
or alternatively, to exclude the innocent from further suspicion. In my training and experience,
an Instagram user's account activity, IP log, stored electronic communications, and other data
retained by Instagram, can indicate who has used or controlled the Instagram account. This
"user attribution" evidence is analogous to the search for "indicia of occupancy" while executing
a search warrant at a residence. For example, profile contact information, direct messaging logs,
shared photos and videos, and captions (and the data associated with the foregoing, such as geo-
location, date and time) may be evidence of who used or controlled the Instagram account at a
relevant time. Further, Instagram account activity can show how and when the account was
accessed or used. For example, as described herein, Instagram logs the Internet Protocol (IP)
addresses from which users access their accounts along with the time and date. By determining
the physical location associated with the logged IP addresses, investigators can understand the
chronological and geographic context of the account access and use relating to the crime under
investigation. Such information allows investigators to understand the geographic and
chronological context of Instagram access, use, and events relating to the crime under

20

investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

81.    Based on the information above, the computers of Instagram are likely to contain all the material described above with respect to the SUBJECT ACCOUNTs, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## Information To Be Searched And Things To Be Seized

82.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Instagram to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

21

### Conclusion

83.     Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted violations, of Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute controlled substances) may be located in the SUBJECT ACCOUNTS described in Attachment A.

84.     This Court has jurisdiction to issue the requested warrant to Instagram because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A),  (c)(1)(A).  Specifically, the Court is a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

85.     Based on the forgoing, I request that the Court issue the proposed search warrant.

86.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  Because the warrant will be served on Instagram, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Mark J. Grado
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me on _Octbr  13_, 2017.
_____/s/_____
Michael S. Nachmanoff
United States Magistrate Judge
The Honorable Michael S. Nachmanoff
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Instagram profile with usernames: _IGMWORLD, ENDLESS_CEDIS, LOYAL_TAYVON, and TRAPWRIGHT703, which are stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a company that is owned by Facebook, Inc. and headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

## I.     Information to be disclosed by Instagram, LLC

To the extent that the information described in Attachment A is within the possession,

custody, or control of Instagram, LLC, including any messages, records, files, logs, or

information that have been deleted but are still available to Instagram, LLC, or have been

preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram, LLC is required to

disclose the following information to the government for each account listed in Attachment A:

a.     All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;

b.     All past and current usernames associated with the account;

c.     The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d.     All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;

e.     All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

f.     All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

g.     All communications or other messages sent or received by the account;

h.     All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content;

i.     All photographs and images in the user gallery for the account;

j.     All location data associated with the account, including geotags;

k.     All data and information that has been deleted by the user;

l.   A list of all of the people that the user follows on Instagram and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user;

m.   A list of all users that the account has "unfollowed" or blocked;

n.   All privacy and account settings;

o.   All records of Instagram searches performed by the account, including all past searches saved by the account;

p.   All information about connections between the account and third-party websites and applications; and,

q.   All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute controlled substances) involving NASIRU CAREW, NATHANIEL BRUCE COBBOLD, TAYVON PATTERSON, and DEON WRIGHT, including, for the usernames identified on Attachment A, information pertaining to the following matters:

(a) The possession and/or sale of controlled substances;

(b) The use of the United States Postal Service and other shipping companies to send packages;

(c) The possession of large amounts of U.S. currency;

(d) The possession of firearms and ammunition;

(e) Evidence indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Instagram account owner;

3

(f) Evidence indicating the Instagram account owner's state of mind as it relates to the crime under investigation; and

(g) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

# UNDER SEAL

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division



AUG 1 6 2017

| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH **NASTYWORLD1** THAT IS STORED AT PREMISES CONTROLLED BY SNAPCHAT | **UNDER SEAL**<br><br>Case No. 1:17sw510 |
|---|---|

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Mark J. Grado, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I make this affidavit in support of an application for a search warrant for information associated with Snapchat handles (or user accounts) "**nastyworld1**" ("SUBJECT ACCOUNT 1") and "**byrddddddd**" ("SUBJECT ACCOUNT 2") and stored at premises owned, maintained, controlled, or operated by Snap Inc ("Snapchat"), which operates a video messaging application by which users can take photos, record videos, add text and drawings, and send them to a controlled list of recipients.  Snapchat is headquartered in Venice, Los Angeles, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Snapchat to disclose to the government records and other information in its possession, including the contents of communications, pertaining to the subscriber or customer associated with SUBJECT ACCOUNT 1 and SUBJECT ACCOUNT 2.

2.      I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2014.  I have experience investigating narcotics and violent crime offenses.

3.     I am currently assigned to the FBI's Washington Field Office, Northern Virginia Resident Agency, and have been so assigned since November 2014. The squad I am assigned to conducts investigations with officers and agents of the Northern Virginia Gang Task Force as well as the High Intensity Drug Trafficking Area programs within the greater Washington Field Office's area of responsibility and elsewhere. As a member of this squad, my duties include, but are not limited to, investigating violations of state and federal laws concerning the unlawful importation, manufacture, and distribution of controlled substances to include conspiracy to distribute violations and criminal enterprise organizations.

4.     Further, through instruction, training, and participation in investigations, as well as through consultation with other agents and law enforcement personnel, I have become familiar with the manner in which narcotics traffickers conduct their illegal business and the methods used to disguise their narcotics activities. From experience and training, I have also learned that narcotics traffickers frequently use encrypted cellular telephone applications, cellular phone services, and other technologies to communicate, conduct, and conceal their illegal activities from law enforcement.

5.     Based on my training and experience and the facts as set forth in this affidavit, I submit there is probable cause to believe that NASIRU CAREW and DEVON BYRD have conspired to distribute and possess with intent to distribute controlled substances, in violation of Title 21 United States Code, Sections 841(a)(1) and 846 . I also have probable cause to believe that SUBJECT ACCOUNT 1 and 2 contain evidence, as set forth in Attachment B hereto, of these offenses.

6.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

2

to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

### Probable Cause

A.   Background on the Investigation

7.      In February of 2017, a cooperating source ("CI-1") reported to the Prince William County Police Department ("PWCPD") that TARVELL VANDIVER ("VANDIVER") was a narcotics distributor. CI-1 is a member of the Imperial Gangster Blood gang. CI-1 will be referred to in the masculine gender, regardless of CI-1's true gender. CI-1 has been convicted of two felonies, including robbery and a probation violation. He was arrested in December of 2016, in Prince George's County, Maryland, for possessing a stolen firearm as a convicted felon and possession of controlled substances. CI-1 originally cooperated because he hoped to receive a lesser sentence. Based on CI-1's cooperation, Prince George's County dismissed his charges, CI-1 continues to cooperate because he is being compensated. CI-1 also hopes to be relocated.

8.      In March 2017, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and FBI began jointly investigating Blood gang members involved in criminal activity in Northern Virginia.

9.      During the course of this investigation, law enforcement learned that VANDIVER is actively conspiring with NASIRU CAREW of Woodbridge, Virginia, to distribute marijuana, THC, and firearms. CAREW's main residence appears to be located in San Diego County, California. However, CAREW regularly travels to this area. During a recent trip to this area, CAREW was stopped in Prince George's County, Maryland. During the course of this investigation, agents have determined that CAREW leads an organization responsible for

3

sending multi-pound shipments of THC gummies to the Northern Virginia area. Many suspects have expressed their fear of CAREW.

B.   Home Invasion of a Residence Located in Falmouth Drive, Woodbridge, Virginia

10.   On November 29, 2013, the PWCPD responded to a home invasion call at a residence located in Falmouth Drive, Woodbridge, Virginia. At the residence, CAREW and another individual ("Individual 1") were interviewed regarding the incident. CAREW and Individual 1 stated that masked subjects broke into the residence by smashing the rear basement sliding door and demanded money from CAREW. Officers identified that several shoeboxes were missing. An officer located one shoebox outside the residence. The shoebox contained marijuana and $900 in U.S. currency. Both CAREW and Individual 1 denied knowing where the marijuana came from.

11.   A search warrant for the residence was obtained due to a strong odor of marijuana in the home. During this search, law enforcement seized 15 grams of marijuana, over $2,000 in U.S. currency, and ammunition for a .357 firearm. Law enforcement also reviewed CAREW's criminal record and determined that he was a convicted felon and thus prohibited from possessing a firearm. CAREW was also a named person on the lease of the residence.

12.   Between January 15 and January 29, 2014, the United States Postal Inspection Service ("USPIS") conducted a parcel interdiction operation at the Dulles Airport. During this interdiction, USPIS identified four parcels mailed from Fresno, California, to locations in Woodbridge, Virginia. The parcels were intercepted and approximately 35 pounds of marijuana was seized. On January 17, 2014, a parcel from Fresno, California, was sent to the address on Falmouth Drive; however, law enforcement did not seize the package.

4

C.    Arrest of CAREW and Search of the Residence located in Falmouth Drive

13.    On January 28, 2014, an arrest warrant was obtained for CAREW based on the evidence obtained during the November 29, 2013 incident at the address located in Falmouth Drive. On January 28, 2014, law enforcement observed CAREW exiting his vehicle and walking toward the front door of the residence in Falmouth Drive. PWCPD detectives approached CAREW and stated he was under arrest. CAREW failed to comply with the officers' commands and fled on foot. CAREW was subsequently taken into custody and $825 was recovered in his pants pocket during the search incident to arrest.

14.    Shortly thereafter, detectives knocked on the door of the residence located in Falmouth Drive. Detectives detected an odor of marijuana and a search warrant was obtained for the residence. During the subsequent search, officers found a safe. CAREW provided the combination for the safe to officers. Law enforcement subsequently located in the safe one pound of marijuana, $1,140 in U.S. Currency, and several rounds of handgun ammunition. CAREW admitted that all the contents of the safe belonged to him.

15.    During a subsequent search of CAREW's vehicle, law enforcement seized one pound of marijuana and a 9mm pistol in the trunk of the vehicle. CAREW stated the car was not his and denied knowing the marijuana and pistol were in the trunk.

D.    Search Warrant of a Residence located in Coppersmith Terrace and Interview with Individual 1

16.    On January 22, 2015, the PWCPD responded to a service call at a residence located in Coppersmith Terrace, Woodbridge, Virginia. Upon arriving and completing a protective sweep of the residence, officers observed marijuana in plain view. As a result, law enforcement sought and obtained a search warrant for the residence. During the subsequent

5

search, law enforcement seized 430 grams of MDMA (otherwise known as Ecstasy), 100 Xanax pills, 34 grams of marijuana, and $7,850 in U.S. currency. The MDMA pills were packaged in two heat-sealed plastic bags. Letters and documents with CAREW's name were found in the residence.

17.     Officers interviewed Individual 1, who stated she and CAREW live in the residence. Individual 1 stated she had just separated from CAREW because she was afraid he was selling drugs and was receiving shipments of drugs.

        E.     <u>Arrest of CAREW and Co-Conspirator 1 in Maryland on April 21, 2017</u>

18.     On April 21, 2017, law enforcement officers of Prince George's County Police Department ("PGCPD"), Maryland, observed a Mercedes Benz traveling at a high rate of speed and that the driver failed to use a turn signal. Officers also observed the vehicle park next to a purple Land Rover. Officers next executed a traffic stop of the Mercedes Benz, which had just parked near the Land Rover. During the traffic stop, officers observed an unidentified male jump out of the passenger seat of the Mercedes Benz vehicle and flee on foot. The unidentified subject was arrested and later identified as CAREW.

19.     During a subsequent search of the Land Rover, law enforcement seized approximately 1,616 grams of marijuana packaged in heat-sealed vacuum bags, 33 packets of THC gummies (approximately 3, 710 grams), and approximately forty-eight grams (48) of a substance suspected to be heroin, and a loaded Glock 40 caliber pistol.

20.     Law enforcement officers additionally seized a large brown box addressed to a residence located in Hawthorn Lane, Woodbridge, Virginia. Law enforcement conducted a database search for the name listed on the receiving address, but found no reference to an individual with that name residing at the Hawthorn Lane address.

6

21.     Later that night, law enforcement executed a search warrant at a residence located in Landover, Maryland.  Law enforcement determined that CAREW was residing at the location and had a bedroom in the residence.  During a search of CAREW's bedroom, law enforcement seized ammunition and approximately $3,701 in U.S. currency.  During a search of a suspected co-conspirator's bedroom, law enforcement seized approximately $4,300 in U.S. currency, marijuana, and a bag containing approximately 60 grams of THC gummy bears.  Further, law enforcement also seized a United Parcel Service ("UPS") tracking slip with CAREW's name on the receipt.

F.     Analysis of CAREW's Cellular Phone

22.     CAREW's cellular phone was seized during his arrest.  The PGCPD obtained a search warrant for CAREW's phone.  During the court-authorized search of CAREW's phone, the PGCPD used Cellebrite to extract the contents of the phone.  This Cellebrite extraction was shared with ATF and FBI.  A review of this extraction report revealed that CAREW's phone contained information about **SUBJECT ACCOUNT 1.**

23.     An image search of CAREW's cellular phone identified approximately ten screenshots images taken from the Snapchat messaging application.  All ten images were taken between February and April 2017.  The screenshot images were identified as belonging to various individuals in CAREW's cellular phone contact list.  The images contained several messages, including addresses, phone numbers, bank accounts, and directions regarding sending money to bank accounts.

24.     One Snapchat screenshot image includes an address located in Magnolia Drive, Aberdeen, North Carolina.  This address matches an image of a United States Postal Service

7

("USPS") label found in CAREW's cell phone.  According to the USPS database, a five-pound package was delivered to this same address on Magnolia Drive on April 6, 2017.  The package originated from the San Diego, California area, which is where CAREW's primary residence is believed to be located.

25.     One Snapchat screenshot image is from the Snapchat vanity name "Mateo."  The screenshot is as follows:

> it's a wells
>
> then put 3k in this one
>
> Stephen B. Grennan
>
> #3436273753

26.     Another Snapchat screenshot image is from the Snapchat vanity name "Bear." The screenshot is as follows:

> Wasup
>
> I'm up
>
> 325085284791 Bank of America elyssa Benavidez

27.     A law enforcement database query found several Suspicious Activity Reports ("SARs") associated with the bank accounts found in both screenshot images.  These SARs included the deposit and withdrawal of thousands of dollars in cash from unidentified individuals in California, Maryland, and New Jersey.

28.     Another Snapchat image is from **SUBJECT ACCOUNT 2**.  The screenshot is as follows:

> Byrddddddd
>
> Its says 27 in the GPS

(540) 656-9556

<u>Me</u>

Bet

29.     I believe based on my training, experience, and from the facts and circumstances
in this case, that CAREW was sending instructions to his co-conspirators and customers using
Snapchat. I believe that CAREW needed to save these bank account numbers, phone numbers,
and addresses for later use and thus saved the images on his cellular phone.

30.     Law enforcement also identified twelve images on CAREW's phone, which
captured USPS and UPS shipping labels written to various addresses located in the Eastern
District of Virginia, Maryland, North Carolina, and Florida. Law enforcement found no record
of any name written as the sender or recipient for each parcel.

31.     As of August 10, 2017, three (3) of the twelve (12) addresses found as images on
the cellular phone have received USPS and UPS packages. A total of seven (7) parcels have
been intercepted and seized by law enforcement. Each of the shipments contained marijuana or
THC edibles.

32.     Law enforcement also searched the web browser history on CAREW's cellular
phone. During this search, law enforcement identified the following topics searched using
Google approximately on April 5, 2017: "usps marijuana news in San Diego, usps marijuana san
diego." The following internet article was accessed following the google search of usps
marijuana san diego: "Mailing marijuana is a popular way to distribute the drug_but illegal-The
San Diego Union-Tribune."

33.     Law enforcement also identified four images of notebook paper contained on
CAREW's cellular phone. Examples of the writing are below:

9

- "I owe chow (12,800) + 2,400 MOR + 50 CANDY

- "I owe Matt (24,600) + 5,200 (24,300)

- "I owe bear (22k)

- "(owe chow) 9,200 + 9 tracks"

- "4 OG @ 5,200"

- "2 Gorilla @ 4,000"

- "100 Candy @ 600"

- "Shipping @ 250"

34.     I know from my training, experience, and other narcotics investigations that it is

common for narcotics distributors to keep track of their drug business on sheets of paper,

booklets, or paper pads (also referred to as "owe sheets"). I also know that narcotics distributors

front drugs to their sub-dealers to sell to customers on consignment. I have seen examples of

owe sheets while conducting searches of drug dealers' residences and viewing seized evidence. I

believe that the phrases "I owe Matt 24,300," "Shipping @ 250," and "100 Candy @ 600" are

figures of money that sub-dealers owe to CAREW or amounts that CAREW owes to sub-dealers.

35.     CAREW's phone also contains images of numerous bank deposit slips in amounts

varying from $250 to $8,500. Many of the deposit slips show the deposits are cash deposits.

Several of the accounts have SARs associated with the accounts for large cash deposits and

withdrawals, as well as cash deposits with an odor of marijuana on the currency.

36.     I know through my training and experience that drug dealers often require proof

of payment for drugs they front or provide to their sub-distributors on consignment. I also know

that drug dealers will often deposit cash into their bank accounts in the amount less than $10,000

to avoid banks reporting the deposit amount. I believe that photographs of these bank deposit slips were taken to provide proof of payment from narcotics sources of supply or sub-distributors.

G.   Parcel Delivery to a Residence in Hawthorn Lane, Woodbridge, Virginia

37.     On April 21, 2017, the USPIS contacted law enforcement regarding two parcels totaling 27 pounds. USPIS believed the parcels were possibly connected to CAREW's Virginia narcotics distribution organization. Surveillance was established on the residence located in Hawthorn Lane, Woodbridge, Virginia. A male individual ("Individual 2") retrieved the parcels and was picked up in a vehicle. PWCPD later conduced a traffic stop of the vehicle. During the traffic stop, Individual 2 fled the vehicle on foot to a nearby laundromat and barricaded himself inside the restroom. Individual 2 was eventually taken into custody without incident.

38.     During a search of the vehicle, law enforcement seized two USPS parcels and an open duffel with approximately eight pounds of marijuana packaged in vacuum packed, heat-sealed plastic bags. Law enforcement sought and obtained a search warrant for the packages. During a search of the packages, law enforcement seized 28 pounds of THC edibles brand name Gummy 420, which were packaged in vacuum packed, heat-sealed plastic bags.

39.     A tracking number on one of the parcels was **9505515930477109083779**. An examination of the web history for CAREW's cellular phone shows two searches were made on April 21, 2017 on the USPS.com website to determine the status of a parcel. The searched website was recorded as:

*"https://tools.usps.com/go/TrackConfirmAction?tLabels=9505515930477109083779."* This parcel tracking number matched the queries searched on CAREW's cellular phone.

11

40.     Based on my training, experience, and the facts and circumstances of this case, I believe that CAREW directed Individual 2 to retrieve the parcels sent to the residence in Hawthorn Lane.

H.      Controlled Parcel Deliveries in King George and Stafford Counties on May 8, 2017

   a.   *King George Parcels*

41.     On May 6, 2017, USPIS contacted the FBI regarding suspicious packages being sent from California to an address in King George County, Virginia. A search of CAREW's cellular phone images shows a picture taken of a USPS Parcel with the same label taken on March 21, 2017. Law enforcement could not locate information that either the named sender or recipient lived at the address in King George County. A USPS database delivery search confirmed that two parcels totaling 13 pounds were previously sent from San Diego County and delivered to the same address in King George County on March 24, 2017.

42.     On May 8, 2017, law enforcement intercepted the two parcels en route to the address in King George County. A narcotics K-9 alerted on one of the parcels. This parcel was seized by a USPS Inspector, and a search warrant was applied for and authorized. A USPS Inspector executed the search warrant and seized approximately 11 pounds of THC laced edibles, brand name Gummy 420, packaged in vacuum packed, heat-sealed plastic bags.

43.     Later that day, law enforcement officers established surveillance at the address in King George County and observed an African American male arrive at the residence. The male then departed shortly thereafter with a backpack. King George County police officers stopped the vehicle for a traffic violation. A narcotics K-9 officer was subsequently dispatched to the vehicle. While conducting a free air sniff around the vehicle, the K-9 alerted to the handler.

Based on probable cause, law enforcement searched the vehicle. During the search, law enforcement seized from the backpack 13 pounds of THC laced edibles, brand name Gummy 420. The driver of the vehicle was identified as **DEVON BYRD**. During a search of the vehicle law enforcement also seized a loaded .40 caliber pistol. BYRD is prohibited from possessing firearms. Based on these seizures, the King George County Sheriff's office arrested BYRD. BYRD did not speak to law enforcement nor did he provide consent to search his cellular phone.

44.     During administrative processing, an ATF agent observed messages being sent to a cellular phone seized from BYRD. The messages were from a Snapchat vanity name "Nasty's WORLD." The "Nasty's WORLD" vanity name is associated with SUBJECT ACCOUNT 1. A picture of the message being typed in real-time to BYRD's phone was taken by law enforcement. Law enforcement later searched the extraction report for CAREW's cellular phone and identified that SUBJECT ACCOUNT 2 was one of CAREW's Snapchat contacts.

45.     Based on my training, experience, and the facts and circumstances of this case I believe that BYRD uses SUBJECT ACCOUNT 2. The below image is the photograph that the ATF agent took of the incoming messages on BYRD's seized phone:



*b. Stafford Parcel*

46.    On May 8, 2017, a USPS Inspector informed the FBI and ATF that two suspicious parcels were possibly connected to CAREW's distribution organization. The parcels were identified to be en route to an address located in McWhirt Loop, Fredericksburg, Virginia. This address was identified as belonging to an automotive repair shop.

47.    Law enforcement officers established surveillance on the address located in McWhirt Loop and observed an African American male departing the address. Stafford County Police Department conducted a traffic stop on the vehicle. The driver was identified ("Co-Conspirator 2"). Co-Conspirator 2 alerted officers that he was in possession of a pistol. No USPS parcels were located in his vehicle.

48.    Law enforcement officers next interviewed an individual ("Individual 3") at the address in McWhirt Loop. Individual 3 stated that he is the owner of the automotive repair shop. Individual 3 stated that the driver is a friend and has received parcels, similar to the two parcels currently at the business. Individual 3 stated he has seen Co-Conspirator 2 sell THC edibles and

that Co-Conspirator 2's customers would come to his automotive repair shop to purchase the THC edibles. Individual 3 also stated that Co-Conspirator 2 told him that he is responsible for what the packages were worth. Individual 3 further explained that Co-Conspirator 2 stated that he (Co-Conspirator 2) would be killed if he did not repay his supplier. Individual 3 stated he did not know who supplied Co-Conspirator 2, but that he knew it was "some African person."

49.     Individual 3 gave consent to open the USPS parcels that were recently delivered to his shop. Law enforcement found and seized approximately 20 pounds of THC laced edibles, brand name Gummy 420, which were packaged in vacuum packed, heat-sealed plastic bags.

50.     The Stafford County Sheriff's department arrested Co-Conspirator 2 for conspiracy to distribute controlled substances. During the arrest, an ATF agent noticed that Co-Conspirator 2's cellular phone received and was in the process of receiving Snapchat messages. The messages were from Snapchat vanity name "Nasty's WORLD." Nasty's WORLD vanity name is associated with SUBJECT ACCOUNT 1. Law enforcement took a picture of the message, which was being typed in real-time to Co-Conspirator 2's cellular phone.

51.     The below is the photograph taken by law enforcement:



52.     On May 9, 2017, law enforcement again interviewed Individual 3.  Individual 3 stated that Co-Conspirator 2 told him he owed his supplier $2,000 for the gummies.  Individual 3 stated that Co-Conspirator 2 told Individual 3 that his supplier is from Africa, lives in California, and travels to Virginia occasionally.  Individual 3 stated that Co-Conspirator 2 told him that he was scared of his supplier and that his supplier was forcing him to sell THC gummies. Individual 3 further stated that he recognized the name "Nastys WORLD" as the Snapchat name Co-Conspirator 2 uses to contact his supplier.

53.     Based on my training, experience, and the facts and circumstances of this case, I believe that Co-Conspirator 2 was and is communicating with CAREW, who is using SUBJECT ACCOUNT 1, and that CAREW is the "African" supplier.

    I.     <u>USPS Parcel intercepted and seized en route to a Residence located on Ellsworth Street, Alexandria, Virginia</u>

54.     On July 13, 2017, the FBI and ATF were alerted to a suspicious package addressed to a residence located on Ellsworth Street, Alexandria, Virginia.  This package was

16

shipped from California. Based on a review of the extraction report for CAREW's cellular phone, law enforcement identified an image containing a shipping label addressed to the same address on Ellsworth Street. A USPS delivery database search confirmed that a 2.25 pound package was delivered to this residence located in Ellsworth Street on March 10, 2017.

55.     A USPS Inspector intercepted the package destined to the Ellsworth Street address. A law enforcement K-9 officer alerted to the parcel and subsequently a search warrant for the parcel was obtained and executed on July 18, 2017. Inside the package, law enforcement seized approximately 9.9 pounds of marijuana contained in vacuum packed heat sealed bags.

J.     Controlled Buy of Three Pounds of Marijuana from VANDIVER and CAREW, July 27, 2017

56.     On July 27, 2017, CI-1, at law enforcement direction, conducted a controlled purchase of three pounds of marijuana from VANDIVER. CI-1 was provided with $8,400 in buy money and outfitted with an audio recording device. Surveillance was established to monitor the transaction.

57.     On July 27, 2017, CI-1 placed an order from VANDIVER for three pounds of marijuana. VANDIVER stated that he would be able to contact his African source of supply for marijuana and that they would have to meet his supplier at the MGM casino located at National Harbor, Maryland.

58.     CI-1 met VANDIVER in Woodbridge, Virginia, and traveled with him to the Tanger Outlets located at the National Harbor parking lot in Oxon Hill, Maryland. Surveillance observed a silver Mercedes Benz enter the parking lot and meet CI-1 and VANDIVER. The vehicle was driven by a black male, who was positively identified as CAREW. While in the parking lot, CI-1 provided VANDIVER the recorded buy money and VANDIVER entered the

silver Mercedes Benz. Surveillance then observed CI-1 follow the silver Mercedes Benz to a Sunoco gas station located at the National Harbor. CAREW was observed exiting the vehicle and walking into the gas station. VANDIVER was then observed exiting the silver Mercedes Benz and reentering CI-1's vehicle. A short time later CAREW returned to the vehicle and both vehicles left the gas station.

59.    Later that night, CI-1 provided law enforcement with three vacuum packed, heat-sealed baggies filled with a green leafy substance believed to be marijuana. CI-1 stated that he provided VANDIVER with the $8,400. CI-1 stated that VANDIVER exited the vehicle in the Tanger Outlet parking lot and entered the silver Mercedes Benz. CI-1 then stated that he followed the silver Mercedes Benz to the Sunoco gas station where VANDIVER entered his vehicle and gave him the marijuana.

60.    On July 28, 2017, an administrative subpoena was served to Sunoco Central Monitoring Facility ("CMF") to request a copy of the surveillance camera footage for the Sunoco National Harbor store. CMF provided video camera recordings for outside and inside the gas station. At approximately 6:20 p.m., CAREW is seen exiting a silver vehicle parked at a pump station and entered the Sunoco store. CAREW is next observed speaking with the attendant and then removing a folded stack of U.S. currency from his pocket. CAREW then paid the attendant with the U.S. currency, exited the store, and then entered the silver Mercedes Benz.

61.    Later that evening, a video recording was posted to an Instagram account linked to CAREW. CAREW is observed in the video with U.S. currency in his pocket. A frame from the video was isolated and recorded. A one-hundred dollar bill with serial number LE01664257E was observed in the video. This serial number matched the serial number of a

18

one-hundred dollar bill provided to CI-1 in buy money for the July 27, 2017 marijuana

transaction.

## Background on Snapchat

62.     Snapchat is a video messaging application by which users can take photos, record

videos, add text and drawings, and send them to a controlled list of recipients, which was

released as an Android app on October 29, 2012.  These sent photographs and videos are known

as "Snaps."  Users may set a time limit for how long recipients can view their Snaps.  A user can

also add the photo/video Snap to their "Story."  Depending on the user's privacy settings, the

photos and videos added to a Story can be viewed by either all Snapchatters or just the user's

friends for up to 24 hours.  Snapchat also has a messaging service.  A user can also type

messages to friends within the Snapchat app using the Chat feature.  A user sends a Chat

message to a friend, and once it is viewed by both parties — and both parties swipe away from

the Chat screen — the message will be cleared.  Within the Snapchat app itself, a user can opt to

save part of the Chat by tapping on the message (text or photo) that he or she wants to keep.

63.     Snapchat maintains basic subscriber information, including usernames, email

addresses, phone numbers, account creation information, Internet Protocol addresses of account

logins and logouts, logs of messages sent and received, including some metadata about the

messages, and some message content.

64.     On August 9, 2017, I sent a preservation letter pursuant to Title 18, United States

Code Section 2703(f) for all stored communications to Snapchat for SUBJECT ACCOUNT 1

and 2.  I have reviewed the Snapchat guide for law enforcement, and know that Snapchat retains

logs of messages sent and received, and they will provide the meta-data about the message

pursuant to a search warrant.  I also know that, according to Snapchat, "In certain limited

19

circumstances it may be possible for us to retrieve the content of sent Snaps. The reason we often will not be able to retrieve Snap content is that we delete each Snap from our servers once all recipients have viewed it. And even when a Snap remains unopened, it will be deleted 30 days after it was sent." I know that Snapchat honors requests from law enforcement to preserve information in accordance with 18 U.S.C. § 2703(f). Upon receiving a preservation request on law enforcement department letterhead, Snapchat will preserve available account information associated with the username listed in the request in an offline file for up to 90 days and will extend the preservation for one additional 90-day period on a renewed request.

65. Based on the information above, the computers of Snapchat are likely to contain all the material described above with respect to SUBJECT ACCOUNT 1 and 2, including stored electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

**Information To Be Searched And Things To Be Seized**

66. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Snapchat to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### ·Conclusion

67.     Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted violations, of Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute and possess with intent to distribute controlled substances) may·be located in SUBJECT ACCOUNT 1 and 2 described in Attachment A.

68.     This Court has jurisdiction to issue the requested warrant to Snapchat because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A).  Specifically, the Court is a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

69.     Based on the forgoing, I request that the Court issue the proposed search warrant.

70.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.  Because the warrant will be served on

Snapchat, who will then compile the requested records at a time convenient to it, there exists

reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Mark J. Grado
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me on ___August 16___, 2017.

_____/s/_____

John F. Anderson
United States Magistrate Judge

The Honorable John F. Anderson
United States Magistrate Judge

22

## ATTACHMENT A

### Place to Be Searched

This warrant applies to information associated with Snapchat user account "nastysworld1" and "byrddddddd," which is stored at premises owned, maintained, controlled, or operated by Snap Inc., a company headquartered at Snapchat Inc: Custodian of Records, 64 Market Street, Venice, California 90291.

## ATTACHMENT B

### Particular Things to Be Seized

I. **Information to Be Disclosed by Snap Inc. (hereinafter the "Provider")**

1.      To the extent that information associated with Snapchat user accounts "nastysworld1" and "byrddddddd" (hereinafter the "Accounts") are within the possession, custody, or control of Provider, including any messages, records, files, logs, or information that have been deleted but are still available to the Provider or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on August 9, 2017, Provider is required to disclose the following information to the government:

   a.      All records or information in the Accounts and maintained regarding the creation and use of the Accounts, including Basic Subscriber Information, Snapchat username, E-mail address, phone number, Snapchat Account Creation information, Timestamp and IP address logins and logouts, address books, contact lists, telephone numbers, Snaps, Stories, and Chats.

   b.      The contents of all messages sent to and from the Accounts, including stored or preserved copies, drafts of messages, any deleted messages that are stored, the source and destination addresses associated with any messages, the date and time at which each message was sent, and the size and length of each message.

   c.      All records or other information regarding the identification of the Accounts, to include full customer or subscriber name, customer or subscriber physical address, local and long distance connection records, telephone numbers, and other identifiers, records of session times and durations, the date on which the Accounts were created, the length of service, the IP address used to register the Accounts, log-in IP

24

addresses associated with session times and dates, account status, alternative email

addresses provided during registration, methods of connecting, log files, and means and

source of payment (including any credit or bank account number).

      d.     The types of service utilized.

      e.     All records pertaining to communications between Provider and any

person regarding the Accounts, including contacts with support services and records of

actions taken.

## II.   Information to Be Seized by the Government

      2.     All information described above in Section I that constitutes evidence of a

conspiracy to distribute and possess with the intent to distribute controlled substances, in

violation of Title 21, United States Code, Sections 841(a)(1) and 846 from November 2013 to

the present:

      a.     All records or information in the Accounts and maintained regarding the

creation and use of the Accounts, including Basic Subscriber Information, Snapchat

username, E-mail address, phone number, Snapchat Account Creation information,

Timestamp and IP address logins and logouts, address books, contact lists, telephone

numbers, Snaps, Stories, and Chats.

      b.     Messages, communications, records, and files associated with or attached

to email messages, and transactional data that constitutes evidence of, that may have been

used to facilitate, and that were capable of being used to commit or further violations of

the above-reference code sections, and to create, access, or store evidence of such crimes.

      c.     Information relating to who created, used, and communicated with the

Accounts, including records about their identities and whereabouts.

     d.     Information indicating how and when the Accounts were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner(s).

     e.     Evidence indicating the Accounts' owner's and user's state of mind as it relates to the crimes under investigation.

     f.     All records, documents, invoices, or materials associated with the Accounts that concern accounts with an Internet service provider or a telephone service provider whose services may have been used in the commission of the above-reference code sections and crimes.

UNDER SEAL

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

SEP 2 9 2017

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH **ENDLESS_CEDIS** THAT IS STORED AT PREMISES CONTROLLED BY SNAPCHAT | **UNDER SEAL** <br><br> Case No. 1:17sw 625 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Mark J. Grado, being duly sworn, do hereby depose and state as follows:

### INTRODUCTION

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have

been so employed since 2014. I am currently assigned to the FBI's Washington Field Office,

Northern Virginia Resident Agency, and have been so assigned since November 2014.  The

squad I am assigned to conducts investigations with officers and agents of the Northern Virginia

Gang Task Force as well as the High Intensity Drug Trafficking Area programs within the

greater Washington Field Office's area of responsibility and elsewhere.  As a member of this

squad, my duties include, but are not limited to, investigating violations of state and federal laws

concerning the unlawful importation, manufacture, and distribution of controlled substances.

2.      I make this affidavit in support of an application for a search warrant for

information associated with Snapchat handles (or user accounts) **"endless_cedis"** ("SUBJECT

ACCOUNT 1"),**"jamrock876"** ("SUBJECT ACCOUNT 2"), **"trapwright703"** ("SUBJECT

ACCOUNT 3), **"bvdvzzrick"** ("SUBJECT ACCOUNT 4"), **"princegibreel"** ("SUBJECT

ACCOUNT 5"), and **"teejaysimmons"** ("SUBJECT ACCOUNT 6"), which are stored at

premises owned, maintained, controlled, or operated by Snap Inc ("Snapchat").  Snapchat

operates a video messaging application by which users can take photos, record videos, add text and drawings, and send them to a controlled list of recipients. Snapchat is headquartered in Venice, Los Angeles, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Snapchat to disclose to the government records and other information in its possession, including the contents of communications, pertaining to the subscriber or customer associated with the six above-mentioned SUBJECT ACCOUNTs.

3.      Based on my training and experience and the facts as set forth in this affidavit, I submit there is probable cause to believe that Nasiru Carew ("Carew") and the users of the six SUBJECT ACCOUNTs, and others yet unknown, have conspired to distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 . I also have probable cause to believe that the above-referenced six SUBJECT ACCOUNTs contain evidence, as set forth in Attachment B hereto, of these offenses.

4.      The facts in this affidavit are based on my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

A.    Background on the Investigation

5.      In February 2017, a cooperating source ("CI-1") reported to the Prince William County Police Department that Tarvell Vandiver was a narcotics distributor. CI-1 is a member of the Imperial Gangster Blood gang. CI-1 will be referred to in the masculine gender,

2

regardless of CI-1's true gender. CI-1 has been convicted of two felonies, including robbery and a probation violation. He was arrested in December of 2016, in Prince George's County, Maryland, for possessing a stolen firearm as a convicted felon and possession of controlled substances. CI-1 originally cooperated because he hoped to receive a lesser sentence. Based on CI-1's cooperation, Prince George's County dismissed his charges. CI-1 continues to cooperate because he is being compensated. CI-1 also hopes to be relocated.

6.     In March 2017, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and FBI began jointly investigating Blood gang members involved in criminal activity in Northern Virginia.

7.     During the course of this investigation, law enforcement learned that Vandiver is actively conspiring with Carew to distribute marijuana, THC, and firearms. Carew's main residence appears to be located in San Diego County, California. However, Carew regularly travels to this area. During a recent trip to this area, Carew was arrested in Prince George's County, Maryland. During the course of this investigation, agents have determined that Carew leads an organization responsible for sending multi-pound shipments of THC gummies to the Northern Virginia area. Moreover, several suspects have expressed their fear of Carew.

B.     Search Warrant issued for Nasiru Carew's Snapchat Account

8.     Based on information that I presented to this Court, this Court issued a sealed search warrant for Carew's known Snapchat account, nastyworld1, on August 16, 2017 (1:17sw510).

9.     This affidavit incorporates by reference my affidavit presented in support of the search warrant for Snapchat account nastyworld1. (*See* Attachment C). In my affidavit, I

3

presented information establishing that there is probable cause to believe that Carew is a member of a conspiracy to distribute controlled substances.

    C.    <u>Probable Cause for SUBJECT ACCOUNT 1</u>

       *a.  Seized Communications Between Carew and SUBJECT ACCOUNT 1*

    10.    As previously stated above, law enforcement obtained content from Carew's known Snapchat account pursuant to a search warrant issued by this Court.

    11.    SUBJECT ACCOUNT 1 is known to be used by NATHANIEL BRUCE COBBOLD. COBBOLD uses the same account name for his Instagram account, which also includes photographs and videos of COBBOLD. Further, and as discussed in more detail in my affidavit in Attachment C, the Prince George's County Police Department obtained a search warrant for Carew's cellular phone. In a subsequent search, law enforcement reviewed Carew's list of contacts. In Carew's contacts, a person named "Nate" was saved with SUBJECT ACCOUNT 1. As stated above, COBBOLD's first name is Nathaniel.

    12.    In addition, in April 2017, law enforcement interviewed CI-1 after a controlled purchase of cocaine from a member of the Imperial Gangster Bloods gang. CI-1 informed law enforcement that the gang member was in contact and communicates with a narcotics distributor named "Nas." Law enforcement later identified "Nas" as Nasiru Carew of Woodbridge, Virginia. CI-1 stated that Carew is a successful drug dealer, who ships narcotics from California through the mail to locations in the Eastern District of Virginia and elsewhere. CI-1 stated that Carew has many people working for him in Virginia, including people who retrieve narcotics packages for Carew.

    13.    Law enforcement asked CI-1 if he could identify a picture of an unidentified male subject. CI-1 identified the person in the picture as "Cedis." CI-1 further stated that gang

4

members informed him that "Cedis" is Carew's "right hand man" in Virginia and assists Carew

by distributing narcotics. Law enforcement later identified "Cedis" as NATHANIEL BRUCE

COBBOLD. Further, a law enforcement database check for COBBOLD returned an address

located on Hildas Way in Woodbridge, Virginia, as COBBOLD's registered address.

14.    Based on a review of Carew's Snapchat account, law enforcement determined that

Carew communicated with the user of SUBJECT ACCOUNT 1 seven times between November

2016 and May 2017. The communication concerned several addresses within the Eastern

District of Virginia.

15.    COBBOLD's residence located on Hildas Way was sent by the user of SUBJECT

ACCOUNT 1 to Carew on November 29, 2016 and March 13, 2017. Another address located on

Hildas Way was sent from SUBJECT ACCOUNT 1 to Carew on March 13 and 23, 2017.

16.    Based on a review of a United States Postal Service ("USPS") query for the

second address located on Hildas Way, law enforcement determined that five parcels shipped

from California to this address on Hildas Way from March 15 to 31, 2017. Four of the five

parcels originated in the San Diego area. Carew is known by law enforcement to reside in a

residence in the San Diego area.

17.    Moreover, based on a review of images on Carew's cellular phone, law

enforcement identified two images of USPS address labels with the second address located on

Hildas Way. The metadata for the image indicated the photograph was taken on March 29,

2017.

18.    On April 12, 2017, a USPS Task Force Officer alerted the FBI that a parcel

suspected to be tied to Carew's narcotics distribution conspiracy was to be delivered to the

second address located on Hildas Way, Woodbridge, Virginia, on April 14, 2017. On April 14,

surveillance was established on Hildas Way and a USPS parcel was observed placed on the front door step. Law enforcement observed COBBOLD exit his known residence on Hildas Way and walk around the parking lot looking into vehicles. Based on COBBOLD's actions, law enforcement discontinued their surveillance.

19.   Based on my training and experience, drug dealers often employ counter-surveillance measures prior to conducting a narcotics transaction. The act of looking into vehicles is an attempt to identify law enforcement, static surveillance, or rival gang members hiding in vehicles.

20.   On April 17, 2017, law enforcement conducted a trash cover for COBBOLD's known residence on Hildas Way, Woodbridge, Virginia. Law enforcement recovered an USPS Priority Mail box, two vacuum-seal bags, and a Backwoods cigar package. The partial shipping label to the recovered package matches a shipping label on a package delivered in April 2017 to a location on Hawthorn Lane, Woodbridge, Virginia. A USPS query for the Hawthorn Lane address found six parcels delivered to the address, all originating from the San Diego, California area.

21.   Carew's cellular phone contained an image of USPS address labels with the Hawthorn Lane address. The metadata for the image indicated the photograph was taken on April 3, 2017. Two parcels were identified by the USPS as being delivered to the Hawthorn Lane address on April 5, 2017.

22.   On April 24, 2017, the USPS parcel label seized during the trash cover at COBBOLD's known residence was presented to a K-9 officer and handler to test for the presence of narcotics on the parcel. During the test, the law enforcement narcotics K-9 officer alerted to his handler for the presence of narcotics. This parcel was sent to the FBI Laboratory in

Quantico, Virginia for further analysis. In September 2017, the FBI Laboratory identified that the latent fingerprints on the packaging material matched COBBOLD and Carew's fingerprints.

23.     Based on these facts, I submit that COBBOLD sending the addresses to Carew via SUBJECT ACCOUNT 1, reflects that COBBOLD was sending Carew addresses to use for shipments of controlled substances.

    b.   *Photograph and Video posts on SUBJECT ACCOUNT 1*

24.     Law enforcement has used an undercover Snapchat account to observe public messages, photographs, and videos posted on SUBJECT ACCOUNT 1. Law enforcement have observed several videos and pictures of COBBOLD holding or possessing distribution quantities of a green leafy substances and smoking a glass water pipe or bong.

25.     On September 3, 2017, a photograph of a plastic bag filled with a green leafy substance was posted on SUBJECT ACCOUNT 1. Based on my training, experience, and knowledge of the investigation, I suspect this green leafy substance was marijuana.

26.     On September 9, 2017, two photographs of an unidentified person's hand holding a green leafy substances in a plastic bag was posted on SUBJECT ACCOUNT 1. Based on my training, experience, and knowledge of the investigation, I suspect this green leafy substance was marijuana.

27.     On September 19, 2017, a photograph of COBBOLD smoking from a glass water pipe or bong was posted to SUBJECT ACCOUNT 1. The user account also posted a picture of a hand holding a quantity of green leafy substances that appear to be marijuana with the location of Jamul, California on the picture. This is significant because Carew is suspected of living in a residence in Jamul, California.

7

28.    Based on my training, experience, and knowledge of the investigation, I believe there is probable cause to believe that Carew and COBBOLD are both members of a conspiracy to distribute marijuana and other controlled substances in the Eastern District of Virginia and elsewhere. Further, I believe there is probable cause to believe that SUBJECT ACCOUNT 1 has been used to facilitate this activity and evidence of this activity will be found on the account.

D.    Probable Cause for SUBJECT ACCOUNT 2

a.  *Arrest of Jamar Cox and Carew on April 21, 2017 in Landover, Maryland*

29.    On April 21, 2017, as discussed in my affidavit included as Attachment C, JAMAR ANTHONY COX ("COX") and Carew were arrested by the Prince George's County Police Department in Landover, Maryland. Subsequent to this arrest, law enforcement obtained a search warrant for COX and Carew's residence. During the search incident to arrest and search of COX's and Carew's residence, law enforcement seized distribution amounts of heroin, marijuana and the recovery of a pistol. Law enforcement also obtained a search warrant for Carew's cellular phone.

30.    In the subsequent search, law enforcement reviewed Carew's contact information. In Carew's contact information, the contact information for a person named "Jamar" was saved under SUBJECT ACCOUNT 2. "Jamar" is known to be the first name for JAMAR ANTHONY COX.

b.  *Seized Communications Between Carew and SUBJECT ACCOUNT 2*

31.    As previously stated in this affidavit, law enforcement obtained content from Carew's known Snapchat account pursuant to a search warrant issued by this Court.

32.     COX is known to use SUBJECT ACCOUNT 2. I based this on the fact that there is an Instagram account, known to be used by COX, which includes photographs of COX as well as photographs of COX, COBBOLD, and Carew.

33.     From May 2016 to June 2017, Carew had multiple drug-related chat messages with SUBJECT ACCOUNT 2.

34.     In a conversation dated February 10, 2017, Carew stated the following:

Happy bday too bro love u man . Gotta progresss more this year anything I gotta do u need help just let me know . Like I always tell u bro .. you gotta say wat u mean and mean wat u say .. everything else will fall according

35.     Based on a search in a law enforcement database, I determined that COX's birthday is on February 10.

36.     Based on a review of Carew's Snapchat return, I determined that six addresses were provided or received by SUBJECT ACCOUNT 2. On February 21, 2017 and April 21, 2017, SUBJECT ACCOUNT 2 sent an address located on Lakehouse Road, Apt #21, Beltsville MD 20705, to Carew. A database search of USPS records identified three parcels delivered to this address between February and April 2017. A parcel weighing approximately ten and one quarter pounds (10.25lbs) was delivered to this address on February 24, 2017. Additionally, a parcel weighing approximately six and one half pounds (6.5lbs) was delivered to this address on April 24, 2017. Each package originated from the San Diego, California area. The total weight of the three packages was approximately twenty seven pounds (27lbs).

37.     In a chat sent from SUBJECT ACCOUNT 2 to Carew on May 9, 2016, SUBJECT ACCOUNT 2 stated "The address 15601 millbrook Lane ? Right bro." Another chat sent from SUBJECT ACCOUNT 2 to Carew on May 18, 2017, stated, "2940 buckthorn ct glenarden M.D. meet me here its round da corner."

38.    Based on my training, experience, and knowledge of this investigation, I believe that SUBJECT ACCOUNT 2 was sending addresses to Carew in order provide an address to receive USPS parcels filled with controlled substances.

39.    In a chat conversation from Carew, dated December 20, 2016, Carew stated the following:

Carew:    Nah them shits done for
Carew:    And if so you gone pay about 500 or better

40.    In a chat conversation on June 14, 2017, Carew sent the following bank account information to SUBJECT ACCOUNT 2, "XXXXXX845 Nasiru Carew (Bank of America)." A few days later, Carew sent the following messages to SUBJECT ACCOUNT 2.

Carew:    Why u got my sis involved in this shit again man?
Carew:    Take the bread out the account

41.    On June 19, 2017, Carew sent the following chat message to SUBJECT ACCOUNT 2:

Carew:    I know it's not that hard bro . You causing all this technicality.. I give you work . And then asked you do you have my money ready . ? And I get a message from my sister saying the money in her account . You holding me up now ! I needed the money days ago . And then I asked u days ago pull the money out .then asked u again today where's the money . For you to tell me a whole other story .. shit is very simple bro

42.    After reviewing Carew's Bank of America account records, I located an email transfer for $1,100 on June 26, 2017, from a bank account in Carew's sister's name to his bank account.

43.    Based on my training and experience, I know that drug dealers "front drugs" or provide drugs on consignment.  I believe there is probable cause to believe that Carew provided

10

drugs to the user of SUBJECT ACCOUNT 2 and that Carew is communicating with the user of

SUBJECT ACCOUNT 2 about the money that he (Carew) is owed.

    *c. Owe Sheets Found on Nasiru Carew's Cellular Phone*

  44. Following Carew's arrest on April 21, 2017, and a court authorized search of his

cellular phone, law enforcement identified four images of notebook paper contained in Carew's

cellular phone.  Examples of the writing are below:

  Jamar gave Cuzz 6,860
  Jamar gave Cuzz 1,500
  Bro gave Cuzz 5,000
  Trap gave Cuzz 2,500

  Jam Made Drop for (7,800)
  Skinny Dropped 2,000 With Jamar
  TRe Sean Dropped 1,250 Jamar
  Tayvon Dropped 5,100
  Cuzz Gave Jam 1OG@2,500
  Skinny Gave Jam 4,000
  Cuzz Gave Jam 2 songs 5,000

  45. : Based on my training and experience, I know that it is common for drug

distributors to maintain records of their drug business on sheets of paper, booklets, or paper pads

(also referred to as "owe sheets").  I also know that drug distributors front drugs to their sub-

dealers to sell to customers on consignment.  I have seen examples of owe sheets while

conducting searches of drug dealers' residences and reviewing seized evidence.  I believe that

the phrases "Jamar gave Cuzz 6,860," "Jam Made Drop for (7,800)," and "Skinny Gave Jam

4,000" refer to money amounts.  I also believe that the names "Jamar" and "Jam" are names used

by Carew to refer to COX (the user of SUBJECT ACCOUNT 2) on the owe sheets.

E. Probable Cause for SUBJECT ACCOUNT 3

    a. *Arrest of Deion Wright and a Co-Conspirator on April 21, 2017 in Landover, Maryland*

46.    On April 21, 2017, DEION WRIGHT was arrested in Maryland following a traffic stop for speeding. During the traffic stop, an officer detected an odor of marijuana and subsequently conducted a search of the vehicle. During a probable cause search of the vehicle, law enforcement recovered four heat-sealed bags with approximately 2,082 grams of marijuana and a loaded Glock .40 caliber handgun. WRIGHT was arrested approximately 40 minutes before Carew and COX. WRIGHT was also arrested approximately half a mile from where Carew and COX were arrested. WRIGHT is known to reside in Alexandria, Virginia.

47.    Law enforcement reviewed Carew's jail calls. During one jail call on April 23, 2017, Carew informed a female that "Trap got out, Scoot hoping to get him." During a second call that same day, Carew asked the female if she could call "Trap" for him. WRIGHT is known to use the name "Trap Wright."

48.    Based on my training, experience, and knowledge of the investigation, I believe there is probable cause to believe that WRIGHT and Carew were involved in a narcotics transaction prior to both parties being arrested in Landover and that WRIGHT is conspiring with Carew to distribute narcotics within the Eastern District of Virginia.

    b. *Seized Communications Between Carew and SUBJECT ACCOUNT 3*

49.    As previously stated above, law enforcement obtained content from Carew's known Snapchat account pursuant to a search warrant issued by this Court.

50.    SUBJECT ACCOUNT 3 is known to be used by WRIGHT because WRIGHT uses the same account name for his Instagram account, which also includes photographs of

WRIGHT. Further, a screenshot of SUBJECT ACCOUNT 3 was posted on WRIGHT's Instagram account.

51.   On February 3, 2017, SUBJECT ACCOUNT 3 provided an address on Ellsworth Street in Alexandria, Virginia, to Carew's Snapchat account. A USPS database search of that address identified six parcels delivered to that address from September 2016 to July 2017. Five of the six parcels were identified as originating from California. The total combined weight of the five parcels originating from California was approximately twenty eight and one half pounds (28.5lbs).

52.   On July 13, 2017, the United States Postal Service Inspector contacted the FBI regarding a parcel believed to be connected to Carew and his co-conspirators. The identified parcel's destination was the same address on Ellsworth St. in Alexandria, Virginia. The parcel was identified and pulled from delivery. A law enforcement narcotics K-9 alerted on the package and a federal search warrant was obtained for the parcel. During a subsequent search, law enforcement seized five heated-sealed plastic bags filled with a green leafy substance suspected to be marijuana. The box contained approximately nine pounds and nine ounces (9.9lbs) of this green leafy substance. Law enforcement database queries did not return any positive name matches for the sender's address or for the Ellsworth address.

53.   Following a court-authorized search of Carew's cellular phone seized during his arrest on April 21, 2017, an image of a USPS label was found in the cellular phone. The recipient's address on the label was the same address on Ellsworth St. The label was from an address in California.

54.   Based on my training, experience, and knowledge of the investigation, I believe there is probable cause to believe that WRIGHT is involved in a conspiracy to distribute

13

controlled substances with Carew.  Further, I believe there is probable cause to believe that

WRIGHT has used SUBJECT ACCOUNT 3 to communicate with Carew and that there is

evidence of this conspiracy on the user account.

F.    Probable Cause for SUBJECT ACCOUNT 4

a.    *Seized Communications Between Carew and SUBJECT ACCOUNT 4*

55.    A review of communications sent between Carew and SUBJECT ACCOUNT 4

found 62 chat messages between Carew and SUBJECT ACCOUNT 4.  Several communications

are drug related.

56.    In a conversation dated July 8 to July 9, 2016, Carew has a conversation with

SUBJECT ACCOUNT 4 ("Bvdvzzrick"):

| | |
|---|---|
| SUBJECT ACCOUNT 4: | The sticker that has the addy on it |
| Carew: | Bet that good looks |
| SUBJECT ACCOUNT 4: | Yap |
| SUBJECT ACCOUNT 4: | I double check the addy on their computer before I sent too |
| SUBJECT ACCOUNT 4 : | So we good |
| Carew: | Bet that |
| Carew: | Anything went out yesterday bro ?? |
| SUBJECT ACCOUNT 4: | Yeah I sent you that track |
| Carew: | One or two ? |
| Carew: | Wher to my snap or text?? |
| SUBJECT ACCOUNT 4: | One the 38 grant |
| SUBJECT ACCOUNT 4 : | You remember getting the track |
| SUBJECT ACCOUNT 4: | You screen shot it |
| Carew: | I don't have no grant address bro |
| SUBJECT ACCOUNT 4: | I meant great oaks |
| Carew: | Yea I see it now lol |
| SUBJECT ACCOUNT 4 | You was lit last night lol |
| Carew: | So only one went out right ? |
| SUBJECT ACCOUNT 4: | Yeah |
| Carew: | Bet |

57.    Carew's cellular phone contained an image of a USPS receipt with a tracking

number for the parcel.  A database search of the tracking number returned a parcel delivery to an

14

address on Great Oaks Dr., Aberdeen, Maryland. The USPS database contains information for 16 parcels delivered to this address between September 2016 and July 2017. Each parcel was shipped from the San Diego area. The total combined weight of the parcels was approximately one hundred and fifty pounds (150lbs).

58.    In a conversation dated July 18, 2016, Carew communicated with SUBJECT ACCOUNT 4:

| | |
|---|---|
| Carew: | I'm a put out two more box today |
| SUBJECT ACCOUNT 4: | Yapp that's a bet |
| Carew: | Wen u wanna go |
| SUBJECT ACCOUNT 4: | Whenever you ready |

59.    Based on my knowledge of this investigation, including how the conspirators use the USPS, United Parcels Service, and FedEx as shipment methods to transport drugs, I believe the these chat messages are conversations regarding the shipping of drugs using the USPS to the address on Great Oaks Dr. I believe that Carew and the user of SUBJECT ACCOUNT 4 are involved in these drug shipments and that evidence of these shipments and other drug shipments are on SUBJECT ACCOUNT 4's account.

G.    Probable Cause for SUBJECT ACCOUNT 5

a.    *Seized Communications Between Carew and SUBJECT ACCOUNT 5*

60.    A review of communications sent between Carew and SUBJECT ACCOUNT 5 found 57 chat messages between Carew and SUBJECT ACCOUNT 5. Several communications are drug related.

61.    In chat messages dated from June 8 to June 11, 2016, Carew has the following conversation with SUBJECT ACCOUNT 5.

| | |
|---|---|
| Carew: | It all depends on the numbers one trying to spend . I try to deal with all good quality but can always get the fuck shit |

15

quick jump back but I try to avoid those lanes I'm in va right now

That's a bet let me know. That's wasup I was thinking bout buying one or two of them joints too ....Investments is everything this shit is just a prelude it don't last forever

Yea you're right that shit definitely lucrative . I've been fucking with it too.... We on the same mission ! Respect bro...

SUBJECT ACCOUNT 5:    No question. Not too many people get the opportunities we get let a lone capitalize on it. Idk where you're gon be at tonight but im come around Alexandria/DC later today & im off tomorrow so let me know something. I'll slide thru

Carew:    That's a bet though I'm a be around Woodbridge /manSsas

SUBJECT ACCOUNT 5:    Ight bet. I'll pull up

62.    A few days later on June 16, 2016, Carew had the following conversation with

SUBJECT ACCOUNT 5:

SUBJECT ACCOUNT 5:    What can 15 do for me bro? I'm tryna shut my side down to keep it a stack . As soon as I'm done Ima run it right back & probably spend my profit with you. That's just how I work

Carew:    It all depends the quality n range you trying to rotate . And how foreal my spirits takes to one ! Cause at the end of the day the money comes and go . I dont try to eat off my bros we eat together. So for the most part I put a 3 to 5 dollar mark up and what I do ..

SUBJECT ACCOUNT 5:    Real Shit. Alright. Let me know when you're ready & I'll pull & cop it up more with you & check out the quality you're working with. My other plug just hit me & said he's got 5 ready for me but I'm tryna weigh my options out...

63.    Based on my training, experience, and knowledge of the investigation, I know

that SUBJECT ACCOUNT 5 is negotiating the price of drugs with Carew and attempting to

build a business relationship.  I know when Carew states he would put a "3 to 5 dollar mark up

16

on it," that Carew is telling the user of SUBJECT ACCOUNT 5 that he is going to charge an

additional cost to SUBJECT ACCOUNT 5, so he can fill his order. I also know that when

SUBJECT ACCOUNT 5 responds that his other "plug just hit me and has 5 ready for me," that

he is stating that his other drug supplier (plug), has five pounds of marijuana available to be

purchased.

64.    Later in the day, Carew responded to SUBJECT ACCOUNT 5.

Carew ...                          . Wat u paying ! Really though

SUBJECT ACCOUNT 5:        24-26 depending on the quality. So I'm tryna fuk with
                                       someone that doesn't have to go thru 2 other people and shit
                                       I'm tryna cut the middle man out. Feel me.

Carew:                              Lol throw it to my lil cousins for 23 or 25 depends but the
                                       most I go high for real is 28 . On the quality .

65.    Based on my training and experience, I know that SUBJECT ACCOUNT 5

provided the cost of marijuana to as between $2,400 to $2,600 per pound. Carew responded

stating that he sells it to his co-conspirators for $2,300 to $2,500 per pound or as high as $2,800

per pound if the quality of the marijuana is high.

66.    Based on my training, experience, and knowledge of this investigation, I believe

there is probable cause that Carew and SUBJECT ACCOUNT 5 are involved in a conspiracy to

distribute marijuana and other controlled substances. Further, I believe that evidence of this

conspiracy can be found in SUBJECT ACCOUNT 5.

H.     Probable Cause for SUBJECT ACCOUNT 6

        a.   *Seized Communications Between Carew and SUBJECT ACCOUNT 6*

67.    A review of communications sent between Carew and SUBJECT ACCOUNT 6

found 63 chat messages exchanges between Carew and SUBJECT ACCOUNT 6. Several

communications are drug related conversations. Additionally, chat message communication between SUBJECT ACCOUNT 6 and Carew included references to addresses, bank account numbers, and instruction on sending mail parcels.

68.    On May 22, 2017, Carew and SUBJECT ACCOUNT 6 had the following chat communication.

| Carew: | Bet that was just bout to hit wen I was done feeding my son ! Like we gotta get something going today |
| Carew: | Try to get 2 addys ! |
| Carew: | These gone be last air for a lil bit . Everting going on with me n this wit my son was not in my plans . So kinda fucked up that whole move of me coming up there . But it's gone go on though I'm get these out to you then the next ones I'll be there |

69.    Based on my training, experience, and knowledge of this case, I know that Carew is contacting SUBJECT ACCOUNT 6 in order send drugs through the mail. When Carew texts "Try to get 2 addys!," Carew is telling SUBJECT ACCOUNT 6 that he needs two addresses in order to send parcels filled with drugs through the mail. I also know that Carew tells SUBJECT ACCOUNT 6 that this will be the last parcel for a period of time and that despite a current family issue, he (Carew) will send the parcels to SUBJECT ACCOUNT 6.

70.    On June 22, 2017, Carew and SUBJECT ACCOUNT 6 had the following conversation.

| Carew: | Wats good wit. How it's looking with that |
| SUBJECT ACCOUT 6: | Not good bro this pack fucked me up all I got like 5 bands for you I'm in Florida now%2C everytime I try to move it ppl either don't want it or they give it back when you break it down there be like 10-15 seeds in every nug I been taking Ls left and right with this |

18

| Carew: | Aight that's a bet . Gotta try work some out wit then shits . I'm a try get some to you gas . To maneuver |
| --- | --- |
| SUBJECT ACCOUNT 6: | Bet will do |
| SUBJECT ACCOUNT 6: | Yo i box that up bro I can send it tomorrow morning if you want |
| SUBJECT ACCOUNT 6: | I just need some more to make back what I lost and everything those joints kinda messed up my whole flow |

71.     Based on my training and experience, I know that this is a drug-related conversation between Carew and SUBJECT ACCOUNT 6 in which SUBJECT ACCOUNT 6 is telling Carew that he is disappointed with the quality of the marijuana because there are a high amount of seeds in the marijuana.  SUBJECT ACCOUNT 6 also states that he is having difficulty selling the marijuana due to the low quality.

72.     On July 5, 2017, Carew and SUBJECT ACCOUNT 6 had the following conversation.

| Carew: | Wats good bro my fault ain't get back at you been side tracked but getting shit back in order though |
| --- | --- |
| Carew: | You never sent me that google either |
| Carew: | How many tracks you says yuh boxed up . I'm trying to work the math out wit my folks now and get u an addy to send it to |
| SUBJECT ACCOUNT 6: | Straight |
| SUBJECT ACCOUNT 6: | [XX] Seminole st Hyde park 02136 |
| SUBJECT ACCOUNT 6: | I got 3 of them boxed up |

73.     Based on my training, experience, and knowledge of this case, I know that Carew is asking SUBJECT ACCOUNT 6 for an order of drugs and that he also is trying to provide

19

SUBJECT ACCOUNT 6 an address to send the drug order. I know that SUBJECT ACCOUNT 6 responded to Carew stating that he has three drug shipments ready to be delivered.

74.     According to the USPS database, between February and May 2017, approximately ten USPS parcels were delivered to the address on Seminole Street. Each of these parcels originated in San Diego, California area.

75.     An image of a USPS label with this same address on Seminole Street was found on Carew's cellular phone. The metadata on the image showed that the image was taken on March 21, 2017. Additionally, a USPS database search identified two parcels delivered to this address on Seminole Street on March 24, 2017. Both parcels originated in the San Diego area and weighed a combined weight of twenty-three pounds (23lbs).

76.     On May 11 and 22, 2017, Carew sent a chat message providing two Bank of America account numbers. The name associated with the bank accounts belongs to Carew's girlfriend. SUBJECT ACCOUNT 6 responded to Carew on May 11, 2017 stating, "My fault bro Ima drop 6K tomorrow that's cool?" Based on my training, experience, and knowledge of this investigation, I believe the user of SUBJECT ACCOUNT 6 was informing Carew that he would send him $6,000, which the user of SUBJECT ACCOUNT 6 owed to Carew for drug shipments.

77.     Based on my training, experience, and knowledge of the investigation, I believe there is probable cause that Carew and SUBJECT ACCOUNT 6 are involved in a conspiracy to distribute marijuana and other controlled substances. Further, I believe that evidence of drug transactions with Carew and others yet unknown are stored on SUBJECT ACCOUNT 6's account.

## Background on Snapchat

78.    Snapchat is a video messaging application by which users can take photos, record videos, add text and drawings, and send them to a controlled list of recipients, which was released as an Android app on October 29, 2012.  These sent photographs and videos are known as "Snaps."  Users may set a time limit for how long recipients can view their Snaps.  A user can also add the photo/video Snap to their "Story."  Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours.  Snapchat also has a messaging service.  A user can also type messages to friends within the Snapchat app using the Chat feature.  A user sends a Chat message to a friend, and once it is viewed by both parties — and both parties swipe away from the Chat screen — the message will be cleared.  Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message (text or photo) that he or she wants to keep.

79.    Snapchat maintains basic subscriber information, including usernames, email addresses, phone numbers, account creation information, Internet Protocol addresses of account logins and logouts, logs of messages sent and received, including some metadata about the messages, and some message content.

80.    On August 28, 2017, I sent a preservation letter pursuant to Title 18, United States Code Section 2703(f) for all stored communications to Snapchat for SUBJECT ACCOUNTs 1, 2, 3, and 4.  I have reviewed the Snapchat guide for law enforcement, and know that Snapchat retains logs of messages sent and received, and they will provide the meta-data about the message pursuant to a search warrant.  I also know that, according to Snapchat, "In certain limited circumstances it may be possible for us to retrieve the content of sent Snaps.  The reason we often will not be able to retrieve Snap content is that we delete each Snap from our servers

21

once all recipients have viewed it. And even when a Snap remains unopened, it will be deleted 30 days after it was sent." I know that Snapchat honors requests from law enforcement to preserve information in accordance with 18 U.S.C. § 2703(f). Upon receiving a preservation request on law enforcement department letterhead, Snapchat will preserve available account information associated with the username listed in the request in an offline file for up to 90 days and will extend the preservation for one additional 90-day period on a renewed request.

81.     Based on the information above, the computers of Snapchat are likely to contain all the material described above with respect to SUBJECT ACCOUNTs 1,2, 3, 4, 5 and 6, including stored electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## Information To Be Searched And Things To Be Seized

82.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Snapchat to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## Conclusion

83.    Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted violations, of Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute and possess with intent to distribute controlled substances) may be located in SUBJECT ACCOUNTs 1, 2, 3, 4, 5, and 6 described in Attachment A.

84.    This Court has jurisdiction to issue the requested warrant to Snapchat because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A). Specifically, the Court is a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

85.    Based on the forgoing, I request that the Court issue the proposed search warrant.

86.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Because the warrant will be served on Snapchat, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Mark J. Grado
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me on ~~SEPTEMBER 29~~ , 2017.

_____ /s/ _____

John F. Anderson
United States Magistrate Judge

The Honorable John F. Anderson
United States Magistrate Judge

23

## ATTACHMENT A

### Place to Be Searched

This warrant applies to information associated with Snapchat user accounts "endless_cedis," "jamrock876," "trapwright703,""bvdvzzrick," "princegibreel," and "teejaysimmons," which are stored at premises owned, maintained, controlled, or operated by Snap Inc., a company headquartered at Snapchat Inc. Custodian of Records, 64 Market Street, Venice, California 90291.

## ATTACHMENT B

### Particular Things to Be Seized

I.    **Information to Be Disclosed by Snap Inc. (hereinafter the "Provider")**

1.    To the extent that information associated with Snapchat user accounts "endless_cedis," "jamrock876," "trapwright703,""bvdvzzrick," "princegibreel," and "teejaysimmons," (hereinafter the "Accounts") are within the possession, custody, or control of Provider, including any messages, records, files, logs, or information that have been deleted but are still available to the Provider or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on August 28, 2017, Provider is required to disclose the following information to the government:

a.    All records or information in the Accounts and maintained regarding the creation and use of the Accounts, including Basic Subscriber Information, Snapchat username, E-mail address, phone number, Snapchat Account Creation information, Timestamp and IP address logins and logouts, address books, contact lists, telephone numbers, Snaps, Stories, and Chats.

b.    The contents of all messages sent to and from the Accounts, including stored or preserved copies, drafts of messages, any deleted messages that are stored, the source and destination addresses associated with any messages, the date and time at which each message was sent, and the size and length of each message.

c.    All records or other information regarding the identification of the Accounts, to include full customer or subscriber name, customer or subscriber physical address, local and long distance connection records, telephone numbers, and other identifiers, records of session times and durations, the date on which the Accounts were

25

created, the length of service, the IP address used to register the Accounts, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number).

        d.     The types of service utilized.

        e.     All records pertaining to communications between Provider and any person regarding the Accounts, including contacts with support services and records of actions taken.

**II.**    **Information to Be Seized by the Government**

    2.     All information described above in Section I that constitutes evidence of a conspiracy to distribute and possess with the intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 from November 2013 to the present:

        a.     All records or information in the Accounts and maintained regarding the creation and use of the Accounts, including Basic Subscriber Information, Snapchat username, E-mail address, phone number, Snapchat Account Creation information, Timestamp and IP address logins and logouts, address books, contact lists, telephone numbers, Snaps, Stories, and Chats.

        b.     Messages, communications, records, and files associated with or attached to email messages, and transactional data that constitutes evidence of, that may have been used to facilitate, and that were capable of being used to commit or further violations of the above-reference code sections, and to create, access, or store evidence of such crimes.

26

c.      Information relating to who created, used, and communicated with the Accounts, including records about their identities and whereabouts.

d.      Information indicating how and when the Accounts were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner(s).

e.      Evidence indicating the Accounts' owner's and user's state of mind as it relates to the crimes under investigation.

f.      All records, documents, invoices, or materials associated with the Accounts that concern accounts with an Internet service provider or a telephone service provider whose services may have been used in the commission of the above-reference code sections and crimes.

# <u>ATTACHMENT C</u>